UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CHARLES C. COX                                                                                              PLAINTIFF

v.                                                                              CIVIL ACTION NO. 3:02-CV-467-S

UNITED STATES DEPARTMENT OF NAVY                                                DEFENDANT

### MEMORANDUM OPINION

This matter is before the court on the motion to dismiss and for summary judgment by the defendant, United States Department of Navy ("the Navy"). This case involves the plaintiff's claims of employment discrimination under the Rehabilitation Act of 1973, as amended (29 U.S.C. §791, *et. seq.*), the Age Discrimination in Employment Act (29 U.S.C. §621, *et. seq.*), and Title VII of the Civil Rights Act of 1964 (29 U.S.C. §2000e, *et. seq.*). For the reasons set forth below, the court will deny the defendant's motion to dismiss but will grant the defendant's motion for summary judgment.

FACTS

The plaintiff ("Mr. Cox") was originally hired by the Navy on July 10, 1983. He last worked for the Naval Ordnance Station as a GS-11 Electronics Engineer. He was removed from this position effective August 23, 1995. The Navy maintains that his removal was due to unacceptable performance while Mr. Cox claims he was discriminated against based upon his age, disability and in retaliation for his filing of EEOC complaints.

In December of 1992, Mr. Cox's supervisor, John V. Kolter, assigned him the project of redesigning the MK 75 Gun Mount Thermistor Assembly ("Thermistor project") to prevent overheating of the gun barrel. After two years, the project was not completed and Mr. Cox had not proposed a single new design. As a result, Mr. Kolter issued a Performance Improvement Plan (PIP) to Mr. Cox in December of 1994. The PIP notified Mr. Cox that his performance on the project was

unacceptable, informed him that Mr. Kolter considered six months an adequate time to complete the project, and allowed him a forty-five day period in which to improve by completing nine specific tasks relevant to the project. This information included a warning that he would be subject to reassignment, reduction in grade, or removal from Federal Service if his performance again reverted below "the first two critical elements of his position."[1] Mr. Cox successfully completed the PIP, which the Navy acknowledged in writing on March 21, 1995.

Mr. Kolter subsequently instructed Mr. Cox to complete an Engineering Change Proposal report (ECP) for the Thermistor project by January 28, 1995. Mr. Kolter extended this deadline, per Mr. Cox's request, to February 28. Mr. Cox met this extended deadline, but his report was incomplete and contained inaccuracies. Mr. Kolter returned the report to Mr. Cox on March 10 with instructions that he submit an acceptable report by March 23. Mr. Cox never produced a complete, correct report. On July 13, 1995, Mr. Cox received notice of his termination, effective August 23. On August 17, 1996, the Naval Ordnance Station was closed pursuant to the recommendation of the Base Closure and Realignment Commission (BRAC). Some personnel members were reassigned and during this process, Mr. Cox's former position was eliminated.

Mr. Cox contacted the Equal Employment Opportunity Commission (EEOC) on September 25, 1995, claiming that the Navy discriminated against him based on age, mental and physical disability and reprisal. After a full investigation, Mr. Cox requested a final agency decision and an EEOC hearing. On May 7, 1997, the EEOC administrative law judge remanded the case to the Department of the Navy because the EEOC had no authority to conduct a hearing on this type of

---

[1] The description of Mr. Cox's position listed and explained several "critical elements" necessary to the job.

"mixed case."[2] Mr. Cox then requested a final agency decision by the Secretary of the Navy without a hearing. The Secretary determined that Mr. Cox's termination did not result from discrimination.

Mr. Cox appealed that decision to the Merit Systems Protection Board (MSPB). The appeal was dismissed without prejudice pending consideration of Mr. Cox's retirement application by the Office of Personnel Management (OPM) and by the MSPB. The OPM denied Mr. Cox's application for Civil Service Retirement System (CSRS) on December 15, 1998. Upon reconsideration, the OPM again denied Mr. Cox's application on January 18, 2000. On April 6, 2001, the MSPB denied Mr. Cox's petition for review of the OPM's initial decision on the application.

Mr. Cox then refiled the appeal of his dismissal with the MSPB on June 25, 2001. The MSPB rendered a decision on February 28, 2001, affirming the EEOC's removal of the case and finding no discrimination. Mr. Cox filed a petition for review, which was denied on May 7, 2002. Mr. Cox then filed a petition for review with the EEOC. The EEOC concurred with the MSPB decision finding that Mr. Cox was not the victim of discrimination.

Mr. Cox then filed the instant case in this court on August 19, 2002. In his complaint, Mr. Cox seeks an injunction prohibiting the Navy from further violating his rights under the Rehabilitation Act, the ADEA, and Title VII. Mr. Cox also seeks a declaratory judgment that the Navy's actions violated his rights. Additionally, he asks the court to grant him reinstatement, an award of damages for back pay and lost benefits, both compensatory and punitive damages, and reasonable attorneys fees.

---

[2] *See* 29 CFR § 1614.302(b)(2)(i):

> Where neither the agency nor the MSPB administrative judge questions the MSPB's jurisdiction over the appeal on the same matter, it shall dismiss the mixed case complaint pursuant to § 1614.107(d) and shall advise the complainant that he or she must bring the allegations of discrimination contained in the rejected complaint to the attention of the MSPB, pursuant to 5 CFR § 1201.155. The dismissal of such a complaint shall advise the complainant of the right to petition the EEOC to review the MSPB's final decision on the discrimination issue.

## DISCUSSION

### *I. Defendant's Motion to Dismiss the Age Discrimination and Reprisal Claims*

The Navy has asked the court to dismiss Mr. Cox's age discrimination and reprisal claims, asserting that this court lacks subject matter jurisdiction over these claims. Citing *Hays v. U.S.,* 868 F.2d 328 (9th Cir. 1989), the Navy argues that Mr. Cox lost his right to raise these claims because he did not properly pursue them at the MSPB hearing. However, *Hays* is distinguishable from the instant case.

In *Hays*, the plaintiff conceded that he did not pursue his discrimination claims before the MSPB, and the MSPB's decision made no mention of those claims. *Id.* at 330. The *Hays* court held that it could find "no case holding that the district court has jurisdiction over discrimination claims that were not raised before the MSPB at any stage of the proceeding." *Id.* In the instant case, however, Mr. Cox did raise claims of age discrimination and reprisal. During his pre-hearing conference, Mr. Cox's representative stated that he would raise no affirmative defense other than disability discrimination. However, in closing argument, his representative alleged that Mr. Cox's termination was based on age discrimination and reprisal as well. Thus, he did raise the claims during some "stage of the proceeding." Furthermore, the MSPB decision specifically addresses the age discrimination and reprisal claims, finding no merit in those claims. *MSPB Initial Decision*, Feb. 28, 2002, p. 18-20. Accordingly, the court will deny the Navy's motion to dismiss these claims and will consider them in the motion for summary judgment.

### *II. Defendant's Motion for Summary Judgment on All Claims*

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party bears the burden of establishing these elements *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Not every factual dispute

between the parties prevents summary judgment. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). To preclude summary judgment, the disputed facts must be material, such that "they might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The dispute must also be genuine, such that "if the facts were proven at trial, a reasonable jury could return a verdict for the non-moving party." *Id.* "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp.*, 822 F.2d at 1435. In making these determinations, the court views all facts and inferences in a light most favorable to the nonmoving party. *Id.*

The court will consider Mr. Cox's discrimination claims *de novo*. *See* 5 U.S.C., §7703(c); §7702(e)(3); *Ballard v. Tennessee Valley Auth.*, 768 F.2d 756, 757 (6th Cir.1985).

A. Disability Discrimination

Mr. Cox seeks relief under the Rehabilitation Act,[3] which prohibits discrimination against disabled persons. Section 504 provides:

> [n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."

29 U.S.C. §794(a). There is no dispute that the Navy, which is a federal agency, is a proper defendant. Mr. Cox bears the burden of establishing the other three elements. His *prima facie* case

---

[3] Both the Rehabilitation Act and the Americans with Disabilities Act (ADA) prohibit discrimination against disabled persons. Courts have held that the analysis under one "roughly parallels" the other. *See Monette v. Electric Data Sys. Corp.,* 90 f.3d 1173, 1177 (6th Cir. 1996). "Because the standards under both the acts are largely the same, cases construing one statute are instructive in construing the other." *Andrews v. Ohio*, 104 F.3d 803, 807 (6th Cir. 1997). Therefore, this court will rely upon cases falling under the ADA as well as the Rehabilitation Act in the following discussion.

consists of showing that he (1) is an individual with a disability, (2) is otherwise qualified to fulfill the requirements of his job, and (3) was terminated solely because of his disability.  *See Doherty v. Southern College of Optometry,* 862 F.2d 570, 573 (6th Cir. 1988).

*1. Mr. Cox is not disabled within the meaning of the Rehabilitation Act.*

With regard to element (1) above, the Rehabilitation Act explicitly defines an "individual with a disability" as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment."  29 U.S.C. §705 (20)(B).

Mr. Cox identifies his disabilities as sleep apnea, a pulmonary disorder, chronic depression and adult attention deficit disorder (AADD).  Mr. Cox has provided statements from his doctors diagnosing these conditions.  However, "[d]etermining whether a physical or mental impairment exists is only the first step in determining whether or not an individual is disabled.  Many impairments do not impact an individual's life to the degree that they constitute disabling impairments."  29 C.F.R. pt. 1630, App. §1630.2(i) (2001).  *See also Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002) ("It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment.").

To qualify as disabling, the impairment must substantially limit one or more major life activities.  As an initial matter, it is necessary to understand what is meant by the term "major life activity."  The EEOC regulations shed light on this by stating:

> "major life activities" are those basic activities that the average person in the general population can perform with little or no difficulty.  Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. This list is not exhaustive.  For example, other major life activities include, but are not limited to, sitting, standing, lifting, reaching.

29 C.F.R. pt. 1630, App. §1630.2(i) (2001). Mr. Cox asserts that his disabilities "create difficulty for him in working, sleeping, [and] attention to details."  Working and sleeping qualify as major life

activities, but concentration does not. *See Doren v. Battle Creek Health System*, 187 F.3d 595, 597 (6th Cir. 1999); *Pack v. Kmart Corp.,* 166 F.3d 1300, 1305 (10th Cir. 1999). However, Mr. Cox has failed to provide any evidence that the impairment *substantially limits* him in the performance of any of these activities. "[I]t is apparent that if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures--both positive and negative--must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled.'" *Sutton v. United Air Lines, Inc*., 527 U.S. 471, 482, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). The record suggests that when medication and other corrective measures were applied, Mr. Cox's impairments were not substantially limiting. In fact, Mr. Cox submitted evidence from his own doctors indicating that his conditions were successfully controlled and that he was able to work without needing any accommodation.

In a letter dated March 3, 1994, Dr. Rueff advised the Navy that Mr. Cox had a "fairly severe sleep apnea for which he uses nocturnal C-PAP." However the doctor specifically opined: "[c]ertainly Mr. Cox is very capable of continuing his current job without any limitations except apparently he does have some difficulty with keeping any sort of a regular schedule." Dr. Rueff made no mention of suggested or necessary accommodations. In a letter dated July March 22, 1994, Dr. Anderson indicated that Mr. Cox "has obstructive sleep apnea and some component of periodic leg movement syndrome." He also wrote that Mr. Cox had "noticed marked improvement [from] wearing his C-PAP." On March 23, 1994, Dr. Rueff stated that Mr. Cox was being treated for depression and that his medication was "working fairly well." He also mentioned that Mr. Cox may have "some adult attention deficit disorder" for which he was being treated, but that he seemed "to be doing fairly well with this." Dr. Manshadi also wrote a letter regarding Mr. Cox's conditions, which was dated January 25, 1995. The doctor stated: "[b]ased on your response to the treatment and the time of taking your medication, it seems that your sleeping pattern has improved to a significant level."

While Dr. Anderson did note that Mr. Cox was "still experiencing some daytime sleepiness," that does not elevate his impairment to the degree of a substantial limitation. The sixth circuit court of appeals has held that some sleep deprivation simply lacks the kind of severity required of an ailment to qualify as a substantial limitation. *See Boerst v. Gen. Mills Operations, Inc.*, 25 Fed.Appx. 403, *cert denied*, 535 U.S. 1097, 122 S.Ct. 2294, 152 L.Ed.2d 1052 (2002). Likewise, Mr. Cox's sleepiness does not rise to the requisite level.

The record shows that Mr. Cox is not substantially limited in a major life activity. Mr. Cox has not demonstrated that he had a record of having a disabling impairment or that he was regarded as having such an impairment. On the contrary, his own evidence indicates that he was functioning relatively well while under the care of various physicians and when taking appropriate medication.

### *2. Mr. Cox was otherwise qualified for his position.*

While he did not demonstrate that he was disabled within the meaning of the Rehabilitation Act, Mr. Cox did successfully establish the second element of his *prima facie* case. He was "otherwise qualified" for his position. Mr. Cox adequately completed his PIP on time, which serves as evidence of his qualification level. It demonstrates that he was able to meet the standards set forth in his job description.

An employer is required to make reasonable accommodations for disabled persons. 29 CFR §1630.9. Mr. Cox claims that his request for a "flexible" work schedule was improperly denied as a reasonable accommodation. The Navy had no "flex time" program allowing for the accommodation sought by Mr. Cox; that is, to be able to report to work any time between 8:00 and 10:00 AM or thereafter. This request was particularly difficult to accommodate because Mr. Cox needed to be on duty with at least one other person due to his sleep apnea. The Navy had various shift schedules, yet none of them was agreeable to Mr. Cox. At one point, Mr. Cox's supervisor did accommodate him by allowing him to work the 8:30 shift where he could be paired with another individual to alleviate safety concerns. While the Navy attempted to work with Mr. Cox's needs,

it was not practical or possible to allow him such an erratic schedule. Employers need not make unreasonable accommodations; rather, employees are only entitled to "reasonable" accommodations under the terms of the statute. *See* 29 CFR §1630.9. The Navy considered Mr. Cox's request that he remain free from adhering to any set schedule unreasonable. However, Mr. Cox's supervisor did allow him to move to a later schedule and to use his leave to cover any tardiness without suffering any negative repercussions. An employer does not have to provide a specific accommodation desired by the employee if the employer provides a reasonable alternative. *See Hankins v. The Gap*, 84 F.3d 797, 800-01 (6th Cir. 1996).

Furthermore, Mr. Cox's own evidence suggests that he could do his job without any accommodation. In the many letters from Mr. Cox's various doctors, none of them identified any specific accommodation necessary for Mr. Cox. As discussed earlier, they all agreed that Mr. Cox's impairments were controlled, except that he experienced sleepiness during the day and complained of difficulty waking up. Dr. Manshadi even indicated that, while under medication, Mr. Cox will be able "to work consistently without much absence or disruption of his performance." Mr. Cox's own performance in successfully finishing the PIP demonstrates that he was qualified to meet the demands of his job without any accommodation.

*3. Mr. Cox's purported disabilities were not the sole cause of his termination.*

To demonstrate the final element of his *prima facie* case, Mr. Cox must show that he suffered an adverse employment action simply because of his disability. The court finds that Mr. Cox was terminated because his performance was unacceptable under the performance standards for critical elements 1 and 2 of his position as Electronics Engineer. During the relevant two and a half year period, Mr. Cox had a single task - sealing the Thermistor Assembly from moisture to prevent overheating. In December of 1994, nearly two years after he received this assignment, Mr. Cox was notified of his unacceptable performance and allowed a forty-five day performance improvement period (PIP) in which he was directed to complete nine specific tasks on the project. When he was

given the PIP, the Navy notified Mr. Cox that he would be subject to demotion or removal should his performance again revert below the first two critical elements of his position. He successfully completed the plan, but within six months, his performance again fell below an acceptable level. Mr. Cox was instructed to complete an Engineering Change Proposal report (ECP) for the Thermistor project by January 28, 1995. Per Mr. Cox's request, this deadline had to be extended to February 28. Mr. Cox met the new deadline, but his report was incomplete and contained inaccuracies. His supervisor subsequently returned the report to Mr. Cox on March 10 with instructions that he submit an acceptable report by March 23. While Mr. Cox was given ample opportunity to improve his performance, he never produced a complete, correct report on the Thermistor project.

The Navy contends that Mr. Cox was fired because of his unacceptable performance on this project. His supervisor indicates that a reasonable time period for completion of the project was six months. However, Mr. Cox continually changed his concept for the new design and made no discernable progress in finishing the project. His performance fell below the first two critical elements of his position and the Navy has established that this was a valid reason for his termination. Mr. Cox's inadequate performance demonstrates that he was not fired solely because of his disability. Thus, Mr. Cox did not meet his burden in establishing all three elements of his *prima facie* case.

### *4. The* McDonnell Douglas *Framework*

If a plaintiff cannot establish the traditional *prima facie* case, then he may rely on the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) to establish discrimination. Under this model, Mr. Cox must first show that (1) he was a member of a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified; and (4) he was treated differently than similarly situated employees for the same or similar conduct. *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582-83 (6th Cir.1992). Then the burden of production would shift to the Navy to provide a legitimate nondiscriminatory reason for its action.

The ultimate burden of persuasion would rest with Mr. Cox to establish that the Navy's proffered reasons were merely a pretext for discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142-43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994). However, Mr. Cox has not established this *prima facie* case either. As noted earlier, he failed to demonstrate that he is disabled within the meaning of the Rehabilitation Act. Thus, he has not shown that he is a member of a protected class. Additionally, he has not provided evidence of similarly situated non-disabled persons who were treated more favorably for similar conduct. Even if he did establish a *prima facie* case, the burden would simply shift to the Navy to articulate a legitimate reason for his termination. As noted earlier, the Navy has met this burden by showing that Mr. Cox was fired due to his deficient performance. Thus, the ultimate burden remains with Mr. Cox. Yet, he points to neither direct nor circumstantial evidence suggesting that his performance was not the actual reason for his termination. Therefore, his discrimination claim must fail.

B. Age Discrimination

In an age-based discrimination case, Mr. Cox bears the burden of establishing employment discrimination. *See Barnhart v. Pickrel, Scheaffer & Ebeling, Co.,* 12 F.3d 1382, 1390 (6th Cir. 1993). Mr. Cox has presented no direct evidence of age discrimination so the court will use the *McDonald-Douglas* test to analyze this claim as well. A plaintiff can establish a *prima facie* case of age discrimination by showing by a preponderance of the evidence that: (1) he was a member of the protected class (age forty to seventy); (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) he was treated worse than a similarly situated younger person. *See Blackwell v. Sun Electric Corp.*, 696 F.2d 1176, 1180 (6th Cir.1983). While Mr. Cox adequately proved the first three elements, he provided no evidence of similarly situated younger persons being treated more favorably.

Even if Mr. Cox did establish a *prima facie* case, that would not end the inquiry. The *prima facie* case merely raises an inference of discrimination and shifts the burden of production to the defendant-employer. *Id.* at 1390. The Navy would then have to provide a legitimate non-discriminatory reason for terminating Mr. Cox. *Id.* As discussed earlier, the Navy provided such a reason: Mr. Cox's performance level was unacceptable under the standards contained in his job description. Therefore, the burden shifts back to Mr. Cox who still carries the ultimate burden of persuasion. *Id.* Mr. Cox must show that the Navy's proffered reason is really a mere pretext for discrimination. *Id.*

> Generally, there are three ways in which an employment discrimination plaintiff may show that his employer's proffered reasons for dismissing him are pretext. The employment discrimination plaintiff may demonstrate pretext by showing: (1) that the stated reasons for his firing had no basis in fact; (2) that the stated reasons for his firing were not the actual reasons; and (3) that the stated reasons for his firing were insufficient to explain the discharge.

*Id.* (citing *Chappell v. GTE Products Corp.*, 803 F.2d 261, 265 (6th Cir.1986), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987); *Wheeler v. McKinley Enterprises*, 937 F.2d 1158 (6th Cir.1991)). Mr. Cox has not shown pretext in any of these ways. The record contains ample evidence regarding Mr. Cox's unacceptable performance over the two year period in which he was working on the Thermistor project. Mr. Cox has provided no evidence that the government's purported reason was truly a pretext for discrimination. On the contrary, Mr. Cox does not dispute much of what the Navy contends regarding his performance. Rather, he indicates that the assignment was more complex than his supervisor believed, and that Mr. Cox devoted much of his time researching and speaking with mechanics. This court agrees with the MSPB's conclusion that this testimony fails to establish that "he accomplished any meaningful work on the project either before or after his 45-day PIP . . . " *MSPB Initial Decision*, Feb. 28, 2002, p. 20. Therefore, his age discrimination claim must fail.

C. Reprisal

In order to establish a *prima facie* case of unlawful retaliation, Mr. Cox must show that: 1) he engaged in a Title VII-protected activity; 2) his employer knew of that activity; 3) he experienced an adverse employment action; and 4) a causal connection exists between the protected activity and the adverse employment action. *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 363 (6th Cir.2002) (citing *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir.2000). It is undisputed that Mr. Cox filed EEOC complaints, that management was aware of this activity and that an adverse job action was taken against him - he was terminated. Thus, Mr. Cox has established the first three elements without contention.

However, he has failed to establish the fourth element. Mr. Cox presented no direct evidence showing that his termination was motivated by a desire to retaliate for his filing of the EEOC complaints. Mr. Cox also has not provided any circumstantial evidence from which to draw the inference of a retaliatory motive. While there is no doubt that Mr. Cox's supervisors were aware of his EEOC activity, this court agrees with the MSPB's finding that Mr. Cox "failed to demonstrate a genuine nexus between [his] EEO complaints and agency officials' alleged retaliatory motives in effecting his removal for unacceptable performance." *MSPB Initial Decision*, Feb. 28, 2002, p. 20.

Even if Mr. Cox did establish a *prima facie* case, the Navy has provided a legitimate and nondiscriminatory purpose for firing him. That is, his performance fell below an acceptable level and he made virtually no progress on his one assignment over a two year period. If Mr. Cox established his *prima facie* case, the burden would shift to the Navy to articulate some such legitimate reason for his termination. *See Canitia v. Yellow Freight System, Inc.,* 903 F.2d 1064, 1066 (6th Cir. 1990). Since the Navy met its burden, the final burden of persuasion again rests with Mr. Cox to establish that the proffered reason was merely pretext. *See id.* As previously discussed, Mr. Cox has provided no evidence that his deficient job performance was not the true cause of his termination. Therefore, his reprisal claim must fail as well.

- 14 -

For the reasons set forth above, the court will grant the defendant's motion for summary judgment on all claims in this case. A separate order will be entered herein this date in accordance with this opinion.

cc: Counsel of Record